214 A.2d 893.

STATE *vs.* VETO E. KOZUKONIS.

DECEMBER 2, 1965.

PRESENT: Roberts, Paolino and Joslin, JJ.

JOSLIN, J. This is a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. 1956, §31-27-2, as amended. On an appeal from a conviction thereunder in a district court the case was tried before a justice of the superior court sitting with a jury and resulted in a verdict of guilty. Thereafter, the defendant's motion for a new trial was heard and denied. The case is now before us on his exceptions to the denial of that motion, to the refusal of the trial justice to direct a verdict of not guilty, to his refusal to pass the case because of remarks made by the prosecutor in arguing to the jury, to his denial of certain requests to charge and to certain evidentiary rulings.

The essential facts are that at approximately 1:30 a.m. on September 24, 1962, a Providence police officer observed defendant's automobile weaving to the left and right of the white center line in a highway. In obedience to the officer's command the car came to a halt and when defend-

ant, the driver, alighted the officer observing that he was swaying and detecting an odor of alcohol on his breath, had him taken to a police station. There Dr. Arnold W. Ciccone, a practicing physician and the deputy police surgeon of Providence, examined him at about 2 a.m. He testified that defendant had a strong odor of alcohol on his breath; that he stated that he was not ill, sick or diabetic and that he had not been taking insulin or other medication; that his speech was slurred and thick; that his clothes were in a disorderly condition; and that his eyes were bloodshot, dilated, and reacted poorly to a flashlight. Additionally, his testimony was that defendant swayed and wobbled during a balance test, that he was unable to touch the tip of his nose with his index finger, and that not until the third attempt was he able to pick up some coins from the floor.

The doctor's direct examination concluded with the opinion, given over objection, that defendant "was under the influence of alcohol to a degree that rendered him unfit to drive." It is defendant's exceptions to the rulings allowing that testimony to stand which constitute the first issue he now raises. The substance of his contention is that permitting an expression of opinion on the ultimate issue before the jury was tantamount to invading and usurping their exclusive province.

While the issue raised by defendant as it relates to a driving under-the-influence prosecution has not heretofore been passed upon by us, an examination of our decisions in cases involving similar prosecutions discloses that the admission of opinion evidence as to an accused's condition has been the practice. *State* v. *Herbert,* 89 R. I. 355; *State* v. *Lacy,* 87 R. I. 134; *State* v. *Turcotte,* 68 R. I. 119. Elsewhere, apparently the majority view permits the opinion to be given. *People* v. *Ravey,* 122 Cal. App.2d 699; *State* v. *Fox,* 248 Iowa 1394; *State* v. *Allen,* 120 Ore. 652. *Contra, Newton* v. *City of Richmond,* 198 Va. 869.

The real question, however, is whether the circumstances will permit a relaxation of the exclusion rule urged by defendant. Professor Wigmore says that a policy of exclusion premised solely on the ground of the coincidence between an opinion and the ultimate fact in issue is both too narrow and too broad and lacks justification in principle. 7 Wigmore, Evidence (3d ed.), §1921, p. 18. While he offers no hard and fast rule, he suggests a flexible and practical approach and one which turns on whether the opinion will appreciably assist the jury in the performance of their function. Id. §1923, p. 21. His views find ample support both in the decisions and from other text writers. *People* v. *Wilson,* 25 Cal.2d 341; *Commonwealth* v. *Chapin,* 333 Mass. 610; *State* v. *Killeen,* 79 N. H. 201; 2 Jones, Evidence (5th ed.), §411, p. 772; 2 Wharton, Criminal Evidence (12th ed.), §518, p. 342.

Our own decisions are reconcilable, though in a negative way, with the Wigmore approach. Thus, we held inadmissible an opinion of an expert in *Fontaine* v. *Follett,* 51 R. I. 413, on the question of whether a highway was safe and convenient for travelers with teams, carts, and carriages, and in *Glennon* v. *Great Atlantic & Pacific Tea Co.,* 87 R. I. 454, as to whether a wall was a hazard because of its location and lack of safeguards. In each of those cases the jury, aware of all the facts and circumstances, were fully as capable as was the expert to conclude as to the ultimate issue and for that reason the opinions solicited would not have provided them with any material assistance. Neither case, therefore, is authority for the bald proposition that in no instance may an expert testify on the very issue upon which the jury must ultimately rest their verdict.

In the case at bar the doctor ruled out other possible causes for the symptoms exhibited by defendant and, in addition, subjected him to various sobriety tests and other examination procedures beyond the competence of the av-

erage layman either to perform or to interpret. The witness' opinion that defendant "was under the influence of alcohol to a degree that rendered him unfit to drive," notwithstanding its identity with the ultimate issue, could therefore have been and probably was of assistance to the jurors in their search for the truth.

Moreover, the jury had before them not only the doctor's opinion, but also other testimony both from him and the arresting officer relating to defendant's appearance and actions. It was their duty to acquit or convict based upon all the evidence and in the performance of their obligation they were at liberty to reject the expert opinion. *State* v. *Supers,* 77 R. I. 251. For the reasons suggested, we find no merit in defendant's contention that it was error to admit the doctor's opinion.

We turn to the next contention. In cross-examination, Dr. Ciccone testified that a possible test for determining intoxication would be a comparison of defendant's signature with the one penned by him when he was examined at the station house. Having elicited that response, defendant then proposed that he be allowed to sign his name so that the witness might make a comparison.

The trial justice refused permission, giving as reasons therefor that the earlier signature had not been one of the bases upon which the witness rested his opinion as to intoxication and that the subject matter of defendant's handwriting had not been inquired into during direct examination. Although we do not fault the ruling, we do the reasons given.

The rule permitting a trial justice in the exercise of his discretion to limit the scope of cross-examination within the reasonable bounds of matters inquired into during the direct examination, *State* v. *Campbell,* 95 R. I. 370, *York* v. *Ventilato,* 80 R. I. 192, has no application if the witness is an expert who has given opinion testimony. In such a

case the latitude permitted is much wider. Within limits of relevancy the scope is expanded so as to allow questions touching matters testified to in direct examination as well as inquiries purposed upon testing the qualifications, skills or knowledge of the witness or the accuracy or value of his opinion, or the methods by which he arrived at or the data upon which he based his conclusion. *Carr* v. *American Locomotive Co.*, 26 R. I. 180; *McVeigh* v. *McCullough*, 96 R. I. 412, 192 A.2d 437.

Here, because the test proposed by defendant involved a then-and-there preparation of a specimen signature for comparison purposes, it is at least open to question whether a specimen prepared for the sole purpose of making the suggested test would be in the form normally and customarily used by defendant. Because the trial justice had no assurance that the signature would be standard it cannot be said that he abused his discretion by refusing permission for the test in the manner proposed.

We now come to defendant's contention that it was error to deny his motion, timely made, to take the case from the jury and pass it. The criticism relates to the propriety of that portion of the attorney general's summation to the jury where, after reviewing the evidence, he concluded by saying: "I submit to you, Mr. Foreman and ladies and gentlemen of the jury, that it is your duty now, as all of this evidence is uncontradicted, it is your duty to return a verdict of guilty, the State having proved its case."

We agree with defendant that a prosecutor in addressing the jury may not exceed proper bounds, and that if he does in a flagrant manner, even a precautionary instruction is insufficient to insure an accused a fair and impartial trial. *State* v. *Werner*, 87 R. I. 314; *State* v. *Lacy*, 87 R. I. 134; *State* v. *Peters*, 82 R. I. 292. Our concern, however, is not with the statement of the rule, but with its application. What statement goes beyond the limits of propriety and

what argument so far exceeds those limitations as to render it incurable by a proper instruction are the difficult problems.

Although there is no unanimity of opinion on these problems, the majority rule, as laid down in what in our judgment are the better reasoned decisions, permits a prosecuting attorney to express his belief in the guilt of an accused so long as it is based on the evidence and does not reasonably permit the jury to infer that it stems from reasons or knowledge outside of the record.

Several illustrations are sufficient to demonstrate the application of the rule. In *Thompson* v. *United States,* 272 F.2d 919, in his closing argument the district attorney said: "I have put a lot of time in this case. I have worked hard on it, but even so I sincerely ask you to go out and render what you consider a proper verdict. I'll be frank with you, I think the verdict is guilty on all three counts." In *Schmidt* v. *United States,* 237 F.2d 542, the argument complained of was: "I believe in the guilt of these two defendants under this evidence." In *Jones* v. *Ohio,* 11 Ohio App. 441, the objection was to that part of the summation where the prosecuting attorney said: "I say to you that the defendant is guilty and I believe we have proven him guilty. Then I am willing to bear my part of the responsibility whatever the verdict may be." And in *People* v. *Williams,* 26 Ill.2d 190, the prosecutor in his opening statement to the jury said: "I am sure after you have heard this case, you will feel as we do that defendant is guilty as charged," and in concluding his summation argued "* * * then coupling all that with statements made by defendant, I think that when you go back there, you will reach the same conclusion that we have reached, and that is that Eddie Williams is guilty of the charge of murder."

In each case cited the holding in substance was that the prosecutor's reference to an accused's probable guilt could

not fairly and reasonably have been construed and understood by the jury to be premised upon personal knowledge outside of the record. So, too, in this case the only reasonable inference that the jury could have drawn from the statement of the attorney general fairly considered in the context of the entire summation was that his opinion of defendant's guilt was based upon the uncontradicted record evidence.

In any event, even if the argument was improper, the deviation from propriety was not so flagrant as not to have been cured by the trial justice who charged the jury in regard thereto:

> "Mr. Cosentino finished his argument to you by saying that, 'In view of the evidence it is your duty to convict'. I would like to correct that statement. It is your duty to do justice here between the State of Rhode Island and the defendant. Your duty is to render an honest verdict in view of all of the evidence as you have heard it."

That precautionary instruction, promptly given by the trial justice, was decisive and, in our judgment, sufficient to disabuse the jury of any possible suspicion that the attorney general premised his reference to guilt on information or knowledge to which they were not privy. *State* v. *Lacy, supra.*

What we have said should in nowise be construed as a blanket license to prosecutors to argue to a jury in every case as did the prosecuting attorney here or in the cases cited by us. If the authorities make anything clear, it is that each case must be decided on its facts and each statement passed upon in the context in which it appears. *State* v. *Peters, supra.* In passing on objections to a statement of probable guilt the trial court as well as this court must insure the preservation of a proper balance between the correlative obligations and rights of a prosecutor which on the one hand require that he not seek a conviction at the

expense of a subversion of the attainment of justice, *State v. Peters, supra,* and on the other, entitle him as an advocate to urge upon the jury that they draw all legitimate inferences from the evidence in the case.

The remaining contentions urged by the defendant so lack merit that we summarily dispose of them without discussion.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for State.

*Arthur M. Merolla,* for defendant.